**United States District Court**
**District of Massachusetts**

```
_____
                           )
Shaun Levesque,            )
                           )
          Plaintiff,       )
                           )
     v.                    )
                           )        Civil Action No.
Schroder Investment Management  )   17-12380-NMG
North America, Inc. and Karl    )
Dasher                     )
                           )
          Defendants.      )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of an employment dispute over commissions allegedly owed, retaliation and age discrimination in an action brought by a plaintiff who was terminated following a company's reorganization in 2017.

I.  **Factual Background**

Shaun Levesque ("Levesque" or "plaintiff"), a resident of Wrentham, Massachusetts was employed by Schroder Investment Management North America, Inc., ("SIMNA") from 2008, until his termination in September, 2017.  Levesque was initially hired as the east coast director of SIMNA's Institutional Sales division. He received his offer letter in 2008, by mail, in Massachusetts and continued to work for SIMNA while in Massachusetts.

At SIMNA, Levesque reported to Jamie Dorrien-Smith ("Dorrien-Smith"), then-CEO of SIMNA, from 2008 to 2012, and then to Karl Dasher ("Dasher"), a resident of New York and Georgia, in 2013, after Dasher became the new CEO.

From 2009 to 2012, Levesque received an annual management bonus ranging from $100,000 to $350,000.  Those management bonuses were consistent with the oral representations made by Dorrien-Smith.  That agreement was presumably memorialized in an internal memorandum which has not yet been produced.

In 2013, SIMNA implemented a new incentive compensation plan ("the 2013 Plan").  Under the 2013 Plan, employees qualified for two kinds of incentive-based compensation schemes: quantitative and qualitative.  The quantitative based compensation was further broken down into two components: individual and team.  Quantitative compensation was earned when revenues were generated and individual quantitative awards were based on a percentage of the employee's gross sales.  By contrast, qualitative compensation was earned at the end of each fiscal year, when the company determined whether the employee had met his or her stated goals.

Under that compensation scheme, SIMNA also had the discretion to defer the team quantitative and qualitative compensations into its Equity Compensation Plan ("the ECP").  As part of the ECP, employees were given either an amount of shares

in the parent company, Schroders plc ("a share award") and/or units in a range of investment products for Schroders plc ("a fund award") that was equal to the value of their earned incentive-based compensation that was deferred.

In February 2014, Dasher allegedly told Levesque that he would not be receiving his customary management bonus for work performed in 2013. Dasher allegedly promised, instead, that Levesque would continue to receive a total compensation package of $1.4 million, even if Levesque's commission sales were lower than his 2013 numbers. Shortly thereafter, Levesque began reporting directly to Marc Mayer ("Mayer") instead of Dasher. Mayer informed Levesque that he was no longer needed as an Institutional Sales manager but reiterated Dasher's earlier promise of $1.4 million in total compensation. Mayer refused to put that agreement in writing and Levesque alleges that he was not compensated as promised for work performed in 2013.

In 2015, Mayer, unbeknownst to Levesque, contacted Allan Conway, the head of Emerging Markets, to discuss transferring Levesque to the Emerging Products division. In 2016, Levesque agreed to the transfer with the understanding that 1) his targeted annual compensation would be between $750,000 and $1 million and 2) he would be entitled to the quantitative commissions he had already earned for the three-year commission cycle within the Institutional Sales division. In June, 2016,

the parties memorialized the terms of Levesque's compensation ("the 2016 Internal Memorandum").

Following his transfer, Levesque avers that SIMNA breached its contractual obligations by failing to pay him: 1) a $250,000 management bonus for 2013, 2) a $300,000 qualitative bonus for 2013, 3) a $367,000 quantitative incentive compensation for work performed in 2016, 4) a $500,000 qualitative incentive compensation for work performed in 2016, and 5) a $732,000 quantitative incentive compensation to which he would have been entitled had he not been terminated in 2017.

Levesque discussed his compensation complaints with several managers and in 2017, Dasher informed him that his Emerging Markets compensation was intended to replace his quantitative compensation previously earned while in Institutional Sales. Levesque then contacted Human Resources but was told to handle the issue directly with Dasher.  Shortly thereafter, Levesque was terminated on the basis that his position had been upgraded and moved to the London office.  Levesque, who is a British national, was not offered the position and was told to tell his co-workers that he intended to retire.

## II.  **Legal Analysis**

### A. **Personal Jurisdiction over Dasher**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of satisfying the Massachusetts

long-arm statute and the Due Process Clause of the Fourteenth Amendment. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). In accordance with that burden, all facts alleged by the plaintiff are taken as true and construed in favor of his jurisdictional claim. Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

### 1. Massachusetts Long Arm Statute

Jurisdiction over the individual officers of a corporation under the Massachusetts long arm statute may not be based on jurisdiction over the corporation. Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F. Supp. 1106, 1111 (D. Mass. 1983). Rather, this Court must determine that there is an "independent basis" for jurisdiction. LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 300 (D. Mass. 2002).

Levesque has demonstrated that Dasher, as SIMNA's CEO, has attempted to participate in the Commonwealth's economic life as a "primary participant" in corporate activities. Cossart, 804 F.3d at 18-19 (holding that the term "transacting any business" is construed broadly). Here, Dasher retained and supervised Levesque, had significant business-related communications with him and made promises to him regarding compensation, all while Levesque retained significant Massachusetts clients and operated out of his Massachusetts office. See id. (finding that a non-resident defendant who unsuccessfully negotiated a contract for

sale of Massachusetts land while outside the Commonwealth was sufficient to satisfy the "transacting any business" requirement).  Thus, because Levesque has demonstrated an independent basis for jurisdiction, the requirements of the long arm statute have been met.

## 2. Due Process Clause

Specific jurisdiction over a defendant exists if a plaintiff demonstrates a nexus between his claims and the defendant's forum-based activities.  In determining whether the requisite nexus is satisfied, the Court evaluates 1) relatedness, 2) purposeful availment and 3) reasonableness. Cossart, 804 F.3d at 20.

Dasher's actions seem to be the catalyst for this action because he allegedly 1) made oral promises to plaintiff regarding his compensation and 2) retaliated against plaintiff for complaining about his compensation.  Thus, relatedness is satisfied. See Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005) (the defendant's in-state conduct must form an "important" or "material" element of proof in the plaintiff's case").

Moreover, Dasher, as plaintiff's supervisor, 1) knew and approved of plaintiff's Massachusetts-generated business, 2) presumably discussed that business with Levesque, 3) negotiated his compensation with respect to Massachusetts-related business

and 4) knew of plaintiff's complaints regarding his unpaid compensation.  Because Dasher had repeated contacts with the Commonwealth, it was reasonably foreseeable that he would be subject to the forum state's jurisdiction.

Finally, with respect to reasonableness, courts assess 1) the defendant's burden of appearing, 2) the forum state's interest, 3) the plaintiff's interest, 4) the judicial system's interest in obtaining effective resolution and 5) the common interests of all sovereigns in promoting substantive social policies. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994).

Dasher has not demonstrated that litigating the suit in Massachusetts presents a "special or unusual burden". See Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994).  Moreover, Massachusetts has a strong interest in adjudicating the dispute because a Massachusetts resident was allegedly injured in Massachusetts and is now claiming relief under Massachusetts law. Ticketmaster-New York, Inc., 26 F.3d at 211.  Furthermore, Levesque resides in Massachusetts and by bringing suit in that forum he is most likely to obtain convenient and effective relief.  In fact, because this Court has jurisdiction over plaintiff's claims against SIMNA, effective resolution of the case renders the forum state suitable.  Finally, litigation of the suit does not impugn the common interests of all sovereigns

with respect to promoting social policies.  Thus, on balance,
the Court finds that Levesque has alleged facts establishing
that Dasher had minimum contacts with Massachusetts such that
maintenance of the suit in this forum would not "offend
traditional notions of fair play and substantial justice".
Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

**B. Motion to Transfer and Change Venue**

Defendants' argument that there is an obstacle to
expeditious and orderly adjudication on the merits, pursuant to
§ 1406(a), is unpersuasive because this Court finds that
personal jurisdiction over Dasher exists.  Their alternative
argument for a change of venue under 28 U.S.C. § 1404(a) is
equally unconvincing. Momenta Pharm., Inc. v. Amphastar Pharm.,
Inc., 841 F.Supp.2d 514, 522 (D. Mass. 2012) (internal citation
omitted) (there is a general presumption in favor of the
plaintiff's choice of forum that a defendant bears the burden of
rebutting).

Here, though an adequate alternative forum exists,
considerations of convenience and judicial efficiency do not
favor litigating this suit elsewhere.  Levesque brought this
action in his home state and alleges multiple violations of the
Massachusetts Wage Act arising out of a contract negotiated and
signed, at least in part, in Massachusetts.  The fact that
defendants' records are located in New York is an insufficient

ground for transferring this case. <u>Blu Homes, Inc.</u> v. <u>Kaufmann</u>, No. 10-11418-DJC, 2011 WL 3290362, at *10 (D. Mass. July 29, 2011).  Finally, unlike <u>Avci</u>, where the plaintiff was not a resident of Massachusetts and there was little connection between the claim and the forum state, Levesque is a resident of the Commonwealth who conducted most of his SIMNA-related business in this state. <u>Cf.</u> <u>Avci</u>, 232 F. Supp. 3d at 220.

Because there is ample connection between the forum, the issues and the law to be applied in this action, defendants' motion to "transfer and change venue" will be denied.

## C. Failure to State a Claim

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. <u>Nollet</u> v. <u>Justices of Trial Court of Mass.</u>, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), <u>aff'd</u>, 248 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Langadinos</u> v. <u>Am. Airlines, Inc.</u>, 199

F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id.  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

### 1. Contract Claims

#### a. Choice of Law

The parties disagree on whether Massachusetts or New York substantive law governs this diversity action.  When a federal court sits in diversity, it must apply the choice of law principles of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Thus, this Court must look to Massachusetts choice-of-law rules.  With respect to contracts, Massachusetts employs a "functional" approach that responds to the "interests of the parties, the States involved, and the interstate system as a whole". Bushkin Associates, Inc. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985).  This means that

the Court must apply the substantive law of the state with the most significant relationship to the transaction in the litigation. <u>Hendricks & Associates, Inc.</u> v. <u>Daewoo Corp.</u>, 923 F.2d 209, 212 n. 3 (1st Cir. 1991). The Court need not, however, address the most significant relationship test where, as here, there is a choice-of-law provision. <u>Bushkin</u>, 473 N.E.2d at 669. While neither party raises this material fact, the 2013 Plan clearly states that "[t]he Plan shall be governed by New York law". Accordingly, the Court will apply New York law with respect to plaintiff's contract claims.

### b. Breach of Contract Claims

Defendants claim that Levesque has no contract claim with respect to the $250,000 management bonus because that amount is not reflected in the 2008 Employment Agreement or any subsequent writing, including the internal email that documents the parties' oral conversation regarding his annual, discretionary management bonus. Moreover, defendants argue that there is no viable contract claim for a bonus that is discretionary. Plaintiff responds that SIMNA failed to pay all commissions due under the 2013 Plan and the 2016 Agreement.

In limiting his claims to compensation that stem from the 2013 Plan and the 2016 Agreement, plaintiff effectively concedes his breach of contract claim with respect to his $250,000 management and $300,000 qualitative bonuses. As defendants

aver, the 2013 Plan, which governs the contract action 1) was signed by all parties, 2) states that it supersedes any prior agreement with respect to sales incentive compensation and 3) permits only written modifications.  Plaintiff has produced no evidence of written modifications to the contrary, partial performance or estoppel. Tierney v. Capricorn Inv'rs, L.P., 592 N.Y.S.2d 700 (N.Y. App. Div. 1993) (holding that when a written contract provides that it can be amended only in writing, an oral modification of that agreement, such as is alleged here, is unenforceable absent partial performance or estoppel).  Thus, plaintiff fails to state a claim with respect to his alleged $250,000 management bonus or his $300,000 qualitative bonus.

With respect to the $367,000 quantitative award, defendants argue that the complaint does not identify any accounts for which he was not paid and thus the claim is implausible on its face.  While plaintiff provides little specificity as to how he arrives at $367,000, taking his complaint as a whole, he has alleged facts sufficient to establish plausibility.

Defendants contend that the 2016 Internal Memorandum provides that the $500,000 qualitative award is "payable at the sole discretion of Schroders".  Based on the plain reading of the contract, this Court agrees.  Plaintiff's breach of contract claim is unavailing in light of the unambiguous language of the contract, which makes clear that awards are subject to the

defendants' sole discretion. <u>Hunter</u> v. <u>Deutsche Bank AG, New York Branch</u>, 866 N.Y.S.2d 670 (N.Y. App. Div. 2008).

As to the $732,000 quantitative award, defendants submit that the 2016 Internal Memorandum provides that no sales-related pay will be due to a terminated employee.  Levesque was an at-will employee who was terminated in 2017.  Pursuant to the terms of the 2013 Plan and the 2016 Internal Memorandum, he has no valid breach of contract claim for payment to which he was entitled only if he remained employed. <u>Sabetay</u> v. <u>Sterling Drug, Inc.</u>, 506 N.E.2d 919 (N.Y. 1987) (finding that an employer has the right to terminate an at-will employee at any time for any reason or for no reason, except where that right has been limited by express agreement).

Accordingly, defendants' motion to dismiss will be allowed as to all of plaintiff's claims for unpaid compensation except for the $367,000 quantitative award.

### c. Quasi-Contract Claims

Under New York law, quasi-contractual relief is unavailable where an express contract covers the subject matter. <u>Karmilowicz</u> v. <u>Hartford Fin. Servs. Grp., Inc.</u>, 494 F. App'x 153, 157 (2d Cir. 2012); <u>Clark-Fitzpatrick, Inc.</u> v. <u>Long Island R. Co.</u>, 516 N.E.2d 190 (N.Y. 1987).  Because Levesque's claims are subject to the 2013 Plan and the parties negotiated an account-by-account agreement regarding sales-related pay in the 2016

Internal Memorandum, plaintiff's quasi-contractual relief is unavailable.  Thus, defendants' motion to dismiss with respect to good faith and fair dealing, promissory estoppel and unjust enrichment will be allowed.

### 2. Massachusetts Wage Act

#### a. Choice of Law

Although the 2013 Plan provides that New York law governs the contract, that choice-of-law provision is not dispositive with respect to plaintiff's Massachusetts Wage Act ("the Wage Act") claim. Melia v. Zenhire, Inc., 967 N.E.2d 580, 590 (Mass. 2012) (holding that the contract's choice of New York law would not govern the Massachusetts Wage Act claim because it makes no reference to statutory causes of actions); see also Berberian v. G-Form, LLC, No. CV 14-10422-JCB, 2014 WL 12700578, at *5 (D. Mass. Aug. 29, 2014) (finding that the Rhode Island choice-of-law provision only applies to the terms of the subject agreement and makes no reference to statutory causes of action).

Thus, the Court returns to the functional choice-of-law approach of the forum state absent a prevailing choice-of-law provision.  Under the most significant relationship test, the Court considers the following factors:

> 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality and place of incorporation of the parties; 6) the needs of the interstate and international

system; 7) the relevant policies of the forum; 8) the interest of those states in the determination of the particular issue; 9) the protection of justified expectations; 10) the basic policies underlying the particular field of law; 11) certainty, predictability and uniformity of result; and 12) ease in the determination and application of the law to be applied.

Dunfey v. Roger Williams Univ., 824 F. Supp. 18, 20 (D. Mass. 1993) (internal citations omitted).

In assessing those factors, the Court is not persuaded that the State of New York has a more significant relationship to the transaction in litigation than the Commonwealth of Massachusetts.  For example, the fact that Levesque worked in Massachusetts and that the contract was partially executed in Massachusetts and New York is not dispositive. Bushkin, 473 N.E.2d at 668 (holding that the governing principles of law should hardly turn on a parsing of the disputed content of a telephone call or, more importantly, on the fortuitous fact that an oral offer was accepted orally in one state rather than in the other).

Nor does the domiciliary of the respective parties or the uniformity of the result weigh in favor of either forum. See id. at 662.  Rather, the strongest factor at issue is the Commonwealth's fundamental policy interest in enforcing the Massachusetts Wage Act. Melia, 967 N.E.2d at 587 (finding that the Wage Act embodies a fundamental public policy of the Commonwealth).  That is not to say that another forum under its

choice-of-law rules would not apply Massachusetts law when determining whether plaintiff has a viable Wage Act claim. <u>Id.</u> (nothing in the text or structure of the Wage Act suggests that enforcement must always be available in Massachusetts).  But unlike <u>Melia</u>, there is no forum selection clause which would require this case to be brought in New York.

Nor is the Court persuaded that <u>Dow</u> is dispositive, as defendants contend. <u>Dow</u> v. <u>Casale</u>, 989 N.E.2d 909, 914 (Mass. App. Ct. 2013).  In <u>Dow</u>, the employee travelled throughout the country on behalf of a company headquartered in Massachusetts. <u>Id.</u>  Because of his nomadic work life, the Massachusetts Appeals Court concluded that there was no substantial relationship to any place but Massachusetts. <u>Id.</u>  Here, Levesque had been working out of his Massachusetts office for more than nine years, an office that had been approved by and paid for by SIMNA.  Moreover, SIMNA withheld Massachusetts income tax from Leveque's pay and purchased health insurance with Massachusetts coverage for Levesque and his family.  Finally, Levesque was tasked with procuring sales from companies throughout the eastern seaboard, including clients in Massachusetts.

Thus, with respect to the Massachusetts Wage Act claim, the Court finds that Massachusetts has the most significant contacts to the transaction in litigation and thus Massachusetts law applies.

### b. Incentive-based Compensation

The Massachusetts Wage Act provides that

> [e]very person having employees in his service shall pay
> weekly or bi-weekly each such employee the wages earned by
> him. . . .

M.G.L. ch. 149, § 148.

To establish a claim for wages under the Act, a plaintiff must show that 1) he was an employee, 2) his form of compensation constitutes a wage and 3) the defendants violated the Act by not paying him his wages in a timely manner. Napert v. Gov't Employees Ins. Co., 36 F. Supp. 3d 237, 241-42 (D. Mass. 2014) (internal citation omitted).  Here, the parties generally dispute whether the compensation at issue constitutes a commission or a bonus.  That factual distinction is material because the Wage Act generally does not encompass bonuses but protects commission payments that are "due and payable" and "arithmetically determinable". Doucot v. IDS Scheer, Inc., 734 F. Supp. 2d 172, 193 (D. Mass. 2010); Okerman v. VA Software Corp., 871 N.E.2d 1117, 1222-25 (Mass. App. Ct. 2011).

Even assuming that plaintiff's management bonus of $250,000 and qualitative bonus of $300,000 are covered by the Act, the Court finds that plaintiff's claims are precluded under the Act's discovery rule. Crocker v. Townsend Oil Co., 979 N.E.2d 1077, 1083 (Mass. 2012) (holding that under the discovery rule, the statute of limitations runs from the time a plaintiff

discovers, or reasonably should have discovered, the underlying
harm for which relief is sought).  Here, Levesque knew in
February and March of 2014, that he would not be receiving a
management bonus of $250,000 or a $300,000 qualitative bonus for
work performed in 2013.  Thus, the three-year statute of
limitations expired before the complaint was filed in November,
2017, and plaintiff's claims are time barred.

With respect to the $500,000 qualitative award in 2016,
which is not time barred, the fact that such compensation was
labeled as "discretionary" does not automatically render it a
non-qualifying "wage" under the Act. Cf. Weems v. Citigroup
Inc., 900 N.E.2d 89, 94 (Mass. 2009) (where the parties agreed
that the payments were "discretionary").  Drawing all reasonable
inferences in favor of the plaintiff, the Court finds that
Levesque's disputed compensation was "due and payable" and
"arithmetically determinable" based on the assertion that
qualitative awards were routinely calculated as a percentage of
revenue generated on new sales production when and if the
participating employee met his or her individual goal (subject
to deferral).

Defendants next submit that the ECP deferral renders the
qualitative compensation discretionary, not a wage under the
Act.  The Court agrees. See id. (holding that compensation was
"earned" in a deferral program only if the individual was

employed at the time the stock vests).  Moreover, the Court is not persuaded by plaintiff's argument that the ECP deferral program constitutes a special contract that violates the public policy of the Wage Act pursuant to Stanton.  In Stanton, the parties agreed to a deferral of plaintiff's salary because the company was not profitable in its first year and could not pay plaintiff. Stanton v. Lighthouse Fin. Servs., Inc., 621 F. Supp. 2d 5, 14 (D. Mass. 2009).  Plaintiff cannot similarly claim that his deferred compensation constitutes a foregone base salary. Thus, he has no claim to commissions deferred pursuant to the ECP.

As to the $367,000 quantitative award in 2016, defendants contend that plaintiff has proffered a conclusory allegation. At the motion to dismiss stage, however, plaintiff has a relatively low hurdle to clear. See Bos. Light Source, Inc. v. Axis Lighting, Inc., No. 17-CV-10996-NMG, 2017 WL 6543868, at *3 (D. Mass. Nov. 13, 2017) (finding that a complaint is sufficient if it puts the defendant on notice of what it is alleged to have done so that it may investigate the complaint and present an appropriate defense).  Plaintiff's complaint alleges that he did not receive a quantitative compensation for institutional sales accrued in 2016, which amounted to $367,000.  Given the low threshold for sufficiency, the Court finds that Levesque has been specific enough to survive a motion to dismiss.

Regarding the $732,000 quantitative award, plaintiff seeks to recover commissions earned in 2017 that would have been paid in 2018 but for his termination.  Defendants rejoin that such incentive compensation was contingent on continued employment and not determinable or due and payable during his employment.

Here, defendants' argument that Sheedy is persuasive as to the continued employment condition is misplaced. Sheedy v. Lehman Bros. Holdings Inc., No. CIV.A. 11-11456-RGS, 2011 WL 5519909, at *4 (D. Mass. Nov. 14, 2011).  In Sheedy, the defendant company provided the plaintiff with an incentive payment as a loan advance and the forgiveness of the loan was extended for only as long as her continued employment. Id.  This is not such a case.  Rather, plaintiff has sufficiently alleged that, with respect to quantitative compensation, he was paid quarterly based on a percentage of his individual gross sales. Such payment is akin to that of commissions, not bonuses, and thus the Court will deny defendants' motion to dismiss. See Israel v. Voya Institutional Plan Servs., LLC, No. 15-CV-11914-ADB, 2017 WL 1026416, at *5 (D. Mass. Mar. 16, 2017).

Defendants next submit that the 2016 Internal Memorandum provides that sales-related pay will not be disbursed if the employee is terminated.  Assuming that the award at issue is a protected "commission" under the Act (i.e., that the award was "earned"), the Court finds that the prescribed withholding of

earned commissions constitutes a special contract in violation of the Act. Stanton, 621 F. Supp. 2d at 14.  Moreover, that contractual term contradicts the terms of Para. 8.1 of the 2013 Plan which provides that an employee who is not terminated for good cause will be paid his

> Individual Quantitative Bonus Award for any complete quarter of the Plan Year . . . and shall be entitled to any pro rata Individual Quantitative Bonus Award for any partial quarter.

Thus, assuming, as plaintiff contends, that sales-related pay was calculable based on his percentage of sales for work performed in 2016, such compensation falls within the Act.

Finally, the Court finds that similar to the claims in Israel, Levesque has sufficiently pled that he earned commissions on sales that occurred in 2017, prior to his termination. Israel, No. 15-CV-11914-ADB, 2017 WL 1026416, at *7 (finding that a delay in the final calculation of commissions does not mean that they fall outside the scope of the Wage Act). Thus, the fact that the calculation for payment may have occurred in a quarter after Levesque left defendants' employment is immaterial. Id.

Accordingly, the motion to dismiss will be allowed except as it relates to the $367,000 and $732,000 quantitative awards.

### c. Retaliation

Defendants contend that there is no evidence that they knew plaintiff was asserting his rights under the Wage Act.  The Court disagrees.  Plaintiff has pled facts sufficient to infer that SIMNA was on notice of his claim for compensation as soon as he complained to CEO Dasher, his direct supervisor, the chief of staff for the Asset Management Group and the Head of Human Resources of the Group, prior to his termination.  Moreover, defendants' argument that causation cannot be inferred based on the temporal proximity between the alleged complaints and the ultimate termination under Mole is unavailing. Mole v. Univ. of Massachusetts, 814 N.E.2d 329, 339 (Mass. 2004).

Notwithstanding the fact that the retaliation claim in Mole did not arise under the Wage Act, plaintiff has met his burden. He has sufficiently alleged facts that he was an employee in good standing who raised a compensation claim and was terminated shortly thereafter. Id. (holding that if adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity, an inference of causation is permissible); see also Dorney v. Pindrop Sec., Inc., No. 15-CV-11505-ADB, 2015 WL 5680333, at *5 (D. Mass. Sept. 25, 2015).  Thus, Levesque's retaliation claim survives defendants' motion to dismiss.

### 3. Age Discrimination

#### a. Choice of Law

As determined previously, this Court finds that the Commonwealth of Massachusetts maintains the most significant relationship to this litigation. See Bushkin, 473 N.E.2d at 668-69.  Accordingly, the Court will apply Massachusetts law.

#### b. Motion to Dismiss

The Court is satisfied that Levesque has established his prima facie burden under the Age Discrimination in Employment Act ("the ADEA") and M.G.L. c. 151B.  He alleges that 1) he was 60 years of age at the time of his termination, 2) he was qualified for his position as one of the top two performing salespersons in his organization, 3) he was actually terminated and 4) at the time of his termination, his performance was better than or equal to the performance of younger employees who were retained and now perform his job. See Del Valle-Santa v. Servicios Legas De Puerto Rico, Inc., 804 F.3d 127, 129 (1st Cir. 2015); Coogan v. FMR, LLC, 264 F. Supp. 3d 296, 304 (D. Mass. 2017) (holding that claims of age discrimination brought under Chapter 151B and the ADEA track one another closely using the burden shifting McDonnell framework where there is no direct evidence of discrimination).

Defendants contest the fourth prong of Levesque's prima facie case and argue that because there was a reorganization, he

is required to demonstrate that SIMNA retained unprotected or younger workers "in the same position" as Levesque.  They have not, however, demonstrated that Levesque must identify specific individuals who were retained to satisfy this prong, and thus, plaintiff's age discrimination claim survives defendants' motion to dismiss. Cf. Caputo v. Quad/Graphics, Inc., No. CIV.A. 14-14159-FDS, 2015 WL 2208825, at *3 (D. Mass. May 11, 2015) (finding that the fact that the hospital retained all women nursing supervisors and discharged the only man is sufficient, by itself, to raise a reasonable inference that the hospital discharged the man because of his sex) (internal citations omitted).  Rather, Levesque's allegation that younger employees were retained post-reorganization to perform his duties is sufficient to state a claim. See id.

Finally, to the extent that defendants refer to their legitimate, non-discriminatory reason for termination, the Court notes that the burden shifting McDonnell framework in an ADEA claim is generally applied at summary judgment, not at the motion to dismiss stage.  Nevertheless, the Court finds that Levesque has elucidated specific facts which would enable a jury to find that the reason given is not only a pretext, but a pretext intended to cover up the employer's real motive: age discrimination. Mesnick, 950 F.2d at 824.  Specifically, the assertions that 1) SIMNA superiors raised his age as an issue at

least five times, 2) Levesque was the only individual terminated as a result of the reorganization and 3) Levesque was told to tell co-workers that he intended to retire, all imply age-based discrimination, even at the final stage of burden shifting.

Accordingly, defendants' motion to dismiss the ADEA and the related state law claims will be denied.

### ORDER

For the foregoing reasons, defendants' motion to dismiss (Docket No. 25) is **DENIED** with respect to 1) dismissal for lack of personal jurisdiction, 2) transfer and 3) change of venue, but is **ALLOWED** with respect to 1) all contract claims, except for the $367,000 quantitative award, 2) the quasi-contractual claims and 3) the Massachusetts Wage Act claims, except as it relates to the quantitative awards of $367,000 and $732,000.


**So ordered.**

_/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated March 27, 2019